**TO: Clerk's Office**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

      -v.-

KENNETH KURSON

20-MJ-990
_____
Docket Number

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✔
Name:  Assistant U.S. Attorney Ryan C. Harris_____
Firm Name: U.S. Attorney's Office, EDNY_____
Address:    271A Cadman Plaza East_____
         Brooklyn, NY 11201_____
Phone Number:  (718) 254-6489_____
E-Mail Address: ryan.harris2@usdoj.gov_____

INDICATE UPON THE PUBLIC DOCKET SHEET: YES____ NO____
**If yes, state description of document to be entered on docket sheet:**

_____

_____

_____

**A) If pursuant to a prior Court Order**:
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

_____

**B) If a <u>new</u> application,** the statute, regulation, or other legal basis that authorizes filing under seal

_____

_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY <u>NOT</u> BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn_____, NEW YORK

*Robert Levy* 10/22/20

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE_____
              DATE

**MANDATORY CERTIFICATION OF SERVICE**:
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

10/22/20
_____
DATE

*Ryan C. Harris*
_____
SIGNATURE

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   20-MJ-990 |
| KENNETH KURSON, | ) | |
| also known as "Jayden Wagner" and "Eddie Train," | ) | |
| | ) | |
| | ) | |

*Defendant*

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    KENNETH KURSON, also known as "Jayden Wagner" and "Eddie Train" ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Interstate stalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5)


Date:      10/22/2020                                    _____
                                                                            *Issuing officer's signature*

City and state:      Brooklyn, New York                    Hon. Robert M. Levy, U.S.M.J.
                                                                            *Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                    _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____        Weight: _____

Sex: _____        Race: _____

Hair: _____        Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____

SPN:RCH/NDR
F. #2018R01123

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

KENNETH KURSON,
      also known as "Jayden Wagner"
      and "Eddie Train,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>COMPLAINT
AND AFFIDAVIT IN
SUPPORT OF ARREST
WARRANT</u>

20-MJ-990

(18 U.S.C. §§ 2261A(2)(B) and
2261(b)(5))

EASTERN DISTRICT OF NEW YORK, SS:

        ANDREW TAFF, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation, duly appointed according to law and acting

as such.

        In or about and between November 2015 and December 2015, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant KENNETH KURSON, also known as "Jayden Wagner" and "Eddie Train," with

the intent to harass, intimidate and place under surveillance with intent to harass and

intimidate, did knowingly and intentionally use the mail, an interactive computer service, an

electronic communication service, an electronic communication system of interstate

commerce and a facility of interstate commerce to engage in a course of conduct that caused,

attempted to cause and would be reasonably expected to cause substantial emotional distress to one or more individuals, to wit: Individual No. 1, Individual No. 2 and Individual No. 3.

(Title 18, United States Code, Section 2261A(2)(B) and 2261(b)(5))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been for approximately five years.   I am assigned to the FBI's New York Field Office.   As a Special Agent, I have participated in numerous investigations involving public corruption.   I am familiar with the facts and circumstances set forth below from my participation in the investigation and from my review of the investigative file and reports of other law enforcement officers involved in the investigation.

## The Investigation

2.     On or about March 26, 2018, KURSON electronically submitted an Electronic Questionnaire for Investigations Processing (the "Questionnaire") to the FBI in connection with his potential appointment to a position with an independent federal agency (the "Potential Appointment").   In the Questionnaire, KURSON was advised that if he withheld, misrepresented or falsified information therein, he could be subject to criminal penalties under Title 18, United States Code, Section 1001.   In the Questionnaire and in other materials submitted in connection with his potential appointment, KURSON made

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

multiple false statements and misrepresentations, including falsely certifying that he had never used any other names or aliases.

3.      After the submission of the Questionnaire and KURSON's other application materials, FBI Special Agents engaged in a background investigation of KURSON in connection with the Potential Appointment.   During the course of that background investigation, FBI Special Agents obtained information indicating that KURSON had used the mail, interactive computer services, electronic communication services, electronic communication systems of interstate commerce and other facilities of interstate commerce to stalk and harass Individual No. 1, Individual No. 2 and Individual No. 3 (collectively, the "Victims") between approximately November 2015 and December 2015.

4.      Thereafter, in approximately May 2018, FBI Special Agents began a criminal investigation into this activity.   During the course of the investigation, FBI Special Agents interviewed numerous individuals involved in the underlying events that transpired between approximately September 2015 and December 2015.   From these interviews and other evidence gathered during the course of the investigation, FBI Special Agents learned that, during this time period, KURSON was engaged in divorce proceedings and blamed Individual No. 1, among others, for the dissolution of his marriage.[2]

5.      As a result, beginning in or about November 2015, KURSON threatened to ruin Individual No. 1's reputation and engaged in a pattern of stalking and harassment against Individual No. 1.   As part of these efforts, KURSON also harassed Individual No. 2, who was a co-worker and supervisor of Individual No. 1, and Individual

---

[2] Prior to the onset of KURSON's harassment of Individual No. 1, KURSON had been friends with Individual No. 1 for more than twenty years.

No. 3, the spouse of Individual No. 2. On information and belief, KURSON has never met Individual No. 2 or No. 3.

### Interstate Stalking and Harassment

6.     During the course of its investigation, FBI Special Agents obtained evidence revealing that KURSON's pattern of abuse against the Victims included, among other conduct, using the aliases "Jayden Wagner" (the "Jayden Wagner Alias") and "Eddie Train" (the "Eddie Train Alias") (collectively, the "Aliases") to file false complaints about Individual No. 1 and Individual No. 2 with their employer (the "Employer"), using the Aliases to post false negative reviews on multiple crowd-sourced review websites about Individual No. 1's purportedly deficient provision of services to "Jayden Wagner" and traveling on multiple occasions to the workplace of Individual No. 1 and Individual No. 2 for no legitimate purpose.[3]

7.     On or about October 30, 2015, KURSON emailed Individual No. 1 and blamed his impending divorce on Individual No. 1's "freedom agenda," claiming that Individual No. 1 had been pushing to "split[] up [KURSON's] family." Later that day, Individual No. 1 replied, denying KURSON's accusation and stating, in part, "Unfortunately,

---

[3] FBI Special Agents have also obtained evidence revealing that KURSON engaged in a similar pattern of harassment in relation to his divorce proceedings against other individuals between approximately September 2015 and December 2015, including by accessing email accounts and social media accounts without their knowledge or authorization; installing software on one individual's computer to monitor that individual's keystrokes and website usage without his/her knowledge or authorization; using aliases to contact their employer and levy false allegations of misconduct, including a false allegation of improper contact with a minor; and using aliases to mail packages to those individuals and their employers.

you have no one to blame but yourself. It is a bitter pill to swallow, but true." KURSON

subsequently emailed Individual No. 1 and stated: "Please don't email me again."

8.       On or about November 3, 2015, KURSON, using the Jayden Wagner

Alias and the email address jaydenlwagner@gmail.com (the "Jayden Wagner Email

Account"), emailed Individual No. 3's employer, a news media publication, and stated that

he "need[ed] to reach [Individual No. 3] via email regarding a personal matter. I assure you,

[Individual No. 3] will want to hear what I have to say – very newsworthy and [Individual

No. 3] knows me from [Individual No. 3's former employer]. Can you ask [Individual No. 3]

to please email me at [the Jayden Wagner Email Account]. Thank you, Jayden Wagner."

KURSON's representation that he knew Individual No. 3 from Individual No. 3's former

employer was false, as KURSON had never met, interacted or otherwise associated with

Individual No. 3. Individual No. 3's employer did not respond to KURSON's email.

9.       That same day, KURSON, using the Jayden Wagner Alias and the

Jayden Wagner Email Account, registered an account at Yelp.com, a website that publishes

crowd-sourced reviews of businesses (the "Jayden Wagner Yelp Account"). Records

maintained by Yelp.com identify the Internet Protocol address used to register the Jayden

Wagner Yelp Account. According to records obtained during the course of this

investigation, that Internet Protocol address, during the relevant time period, belonged to

KURSON's employer, indicating that KURSON registered the Jayden Wagner Yelp Account

using the internet services registered to KURSON's employer and did so from a location in Manhattan.[4]

10.     Records maintained by Google reflect that, during the relevant time period, the Jayden Wagner Email Account received email newsletters from KURSON's employer, including newsletters containing content authored by KURSON, further associating KURSON with the Jayden Wagner Email Account.

11.     As further discussed in paragraphs 24, 32, 33, 34, 36 and 41, FBI Special Agents obtained additional evidence establishing that KURSON was the user of the Jayden Wagner Alias and the Jayden Wagner Email Account, including, but not limited to: (i) Yelp.com records reflecting use of the Jayden Wagner Yelp Account on internet services maintained by KURSON's employer; (ii) email records reflecting that KURSON sent himself a copy of a negative review of Individual No. 1 posted by the Jayden Wagner Yelp Account; (iii) surveillance video recordings demonstrating that KURSON was the individual who took a photograph attached to a negative review posted by the Jayden Wagner Yelp Account; (iv) Yelp.com records reflecting interactions between the Jayden Wagner Yelp Account and another Yelp.com account maintained by KURSON; and (v) email records reflecting that the Jayden Wagner Yelp Account and a Facebook.com account associated with the Jayden Wagner Email Account were closed on the same day that KURSON was served with a temporary restraining order.

---

[4] According to a Yelp.com representative, information submitted to its website by users are transmitted from a user's device to Yelp.com computer servers, none of which are housed in New York City.   As a result, when KURSON registered the Jayden Wagner Yelp Account, KURSON electronically transmitted that registration information from Manhattan across the waters surrounding New York County to Yelp.com computer servers.

12.     On or about November 5, 2015, Individual No. 1 emailed KURSON and reiterated that Individual No. 1 had not induced KURSON's impending divorce.   In his response, KURSON described Individual No. 1 as a "completely full of shit phony who lies through [Individual No. 1's] teeth and is also stupid. . . . You are the biggest liar I have ever met. . . . [E]verything you touch turns to shit. . . . Please don't ever email me again. That's the second time I'm asking. There's not going to be a third time. Fuck you. Forever. Got it?"

13.     That same day, KURSON, using the Eddie Train Alias and the email address eddietrain@protonmail.com (the "Eddie Train Proton Account"), contacted Individual No. 3.   In that email, KURSON falsely represented that he worked with Individual No. 3's husband, Individual No. 2, at the Employer.   KURSON also falsely represented that he previously attended high school with Individual No. 2.   KURSON then claimed to Individual No. 3 that Individual No. 1 and Individual No. 2 were engaged in an illicit sexual relationship.[5]   Individual No. 3 did not respond to KURSON.

14.     The email service provider for the Eddie Train Proton Mail Account was Proton Mail, an end-to-end encrypted email service based outside the United States. Bank records obtained during the course of this investigation reflect that KURSON paid Proton Mail $17.00 on or about November 5, 2015, the same day that the first email was sent from the Eddie Train Proton Account to Individual No. 3.

15.     According to records maintained by Google, the recovery email address for the Jayden Wagner Email Account was the Eddie Train Proton Account reflecting that the same individual, namely KURSON, was the user of both accounts.

---

[5] During the course of its investigation, FBI special agents did not obtain any evidence to substantiate this allegation by KURSON.

16.     On or about November 6, 2015, Individual No. 1 advised Individual No. 2 and other employees at the Employer that KURSON had been "sending threatening emails and saying he'll 'ruin me.'"   Individual No. 1 further stated: "Can you please ask the front desk [at the Employer] not to tell [customers] over the phone when I am working? Also if there are weird complaints against me, let me know and I will make sure I actually saw the [customer]. . . . [KURSON] has been very destructive to other's careers and reputations and I value both greatly. I'm sorry to have to send such an email. This is very embarrassing."

17.     On or about November 8, 2015, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, contacted Individual No. 3 again and asked Individual No. 3 to confirm receipt of KURSON's email dated November 5, 2015.   KURSON indicated to Individual No. 3 that, if Individual No. 3 did not confirm receipt, he would send the "sensitive email" to email addresses associated with Individual No. 3's former employer. Individual No. 3 did not respond to KURSON.

18.     That same day, Individual No. 2 and Individual No. 3 provided KURSON's November 5, 2015 and November 8, 2015 correspondence with Individual No. 3 to a senior employee at the Employer and thanked the senior employee for her "assistance with this upsetting matter."

19.     On or about November 9, 2015, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, again contacted Individual No. 3.   KURSON advised Individual No. 3 that, if Individual No. 3 did not respond to him, he would contact a supervisor at the Employer, again falsely representing that he was employed with Individual No. 1 and Individual No. 2 at the Employer.   KURSON further claimed to Individual No. 3 that he had contacted multiple individuals at Individual No. 3's former employer in his

efforts to reach Individual No. 3.   KURSON falsely claimed that his "working situation [at the Employer had] been made impossible by th[e] ongoing relationship" between Individual No. 2 and Individual No. 1."   KURSON finally stated to Individual No. 3 that he would be taking "next steps" in the future.

20.     That same day, Individual No. 3 contacted an employee at the Employer via email and stated that the claim by the user of the Eddie Train Proton Account, namely KURSON, had contacted Individual No. 3's "close former colleagues, involving my professional world is a very upsetting escalation."

21.     That same day, Individual No. 2 emailed a senior employee at the Employer that Eddie Train appeared to be a "fictitious" person, as it was "certainly not the name of an employee" at the Employer, nor was there any "employee who fits the description in the email – i.e. no employee who knows me from high school."

22.     Subsequently, that same day, Individual No. 3 emailed KURSON at the Eddie Train Proton Mail Account and stated that Individual No. 3 had referred KURSON's claims to the Employer.   Individual No. 3 further stated: "These emails are harassing and I will not respond further. Cease and desist any further emails to me or my family immediately."   Later that day, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, replied that he would bring his allegations directly to the attention of the Employer, where Individual No. 1 and Individual No. 2 worked.

23.     That same day, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, emailed a senior employee at the Employer.   In the email, KURSON falsely claimed that he worked with Individual No. 1 and Individual No. 2 at the Employer and, further, falsely asserted that he had known Individual No. 2 for several years, originally

attending the same high school as Individual No. 2. KURSON further alleged that Individual No. 2 was engaged in an illicit sexual relationship with Individual No. 1. KURSON also alleged that Individual No. 1 had "all but stalked" Individual No. 2, and falsely claimed that he had "seen them embracing at work." KURSON, falsely purporting to be an employee at the Employer, alleged that "the disruption that this [illicit sexual relationship between Individual No. 1 and Individual No. 2] is causing here is difficult to explain. . . . But the situation is out of hand. . . . [H]onestly, it's [Individual No. 1's] fault." KURSON signed the email as "A Concerned Friend."

24. On or about November 10, 2015, KURSON, using the Jayden Wagner Alias and the Jayden Wagner Yelp Account, posted a negative review of services provided by Individual No. 1. In the review, KURSON falsely claimed that he had brought his sister to the Employer on or about October 24, 2015. KURSON falsely claimed that he and his sister received "inexcusable rude treatment" from Individual No. 1. KURSON further falsely claimed that, during the course of this purported visit with Individual No. 1, KURSON observed that Individual No. 1 was "sick as a dog." KURSON further falsely stated that Individual No. 1 admitted to KURSON that Individual No. 1 "had come down with pneumonia earlier in the week," but had "snapped at [KURSON] that [Individual No. 1] was on intravenous fluids." KURSON stated that he had "never experienced a crankier . . . person" in Individual No. 1's profession and that the purported visit with Individual No. 1 was a "very unsettling experience." According to records maintained by Yelp.com, this negative review of Individual No. 1 was posted to Yelp.com from an Internet Protocol address that, during the relevant time period, belonged to KURSON's employer,

indicating that KURSON had submitted the negative review using internet services registered to KURSON's employer and from a location in Manhattan.[6]

25.     That same day, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, emailed a senior employee at the Employer and falsely alleged that another co-worker of his at the Employer "want[ed] to complain [about the alleged illicit sexual relationship between Individual No. 1 and Individual No. 2] as well."   KURSON further asked: "Will we know if action is being taken or just assume that it's out of our hands now? Do we have any 'right' to know what's being done, if anything?"   In a subsequent email to the senior employee, KURSON falsely claimed that the co-worker at the Employer no longer "want[ed] to contact you. . . . But she did tell me some additional details that give color to the existence of the inappropriate relationship" between Individual No. 1 and Individual No. 2.   Among other things, KURSON alleged that Individual No. 1 and Individual No. 2 had watched a baseball game together and then slept together at Individual No. 1's apartment.   KURSON alleged that the illicit sexual relationship between Individual No. 1 and Individual No. 2 was "creating havoc" at the Employer where KURSON falsely claimed to work.

26.     On or about November 11, 2015, Individual No. 1 emailed a senior employee at the Employer, in which Individual No. 1 advised that Individual No. 1 had read the negative review posted by KURSON on Yelp.com on November 10, 2015, and

---

[6] As previously discussed, because Yelp.com computer servers are not housed in New York City, when KURSON submitted a negative review to Yelp.com from a location in Manhattan, KURSON electronically transmitted that information across the waters surrounding New York County to Yelp.com computer servers.

concluded that the author was "definitely" KURSON.   Individual No. 1 further advised that,

approximately two weeks earlier, Individual No. 1 had falsely stated to KURSON that

Individual No. 1 could not attend his birthday party because Individual No. 1 "was ill with

pneumonia and on [intravenous] fluids."[7]   This excuse mirrored allegations made by

KURSON in the negative review of Individual 1 posted on Yelp.com on November 10, 2015.

Individual No. 1 stated that, as a result of KURSON's actions, it had been "[a] real nice

humiliating day."

27.   That same day, Individual No. 1 emailed another senior employee at

the Employer and stated that it was "very embarrassing that [KURSON was] causing this

much harassment."   Individual No. 1 further stated that KURSON was "clearly" the author

of the negative review posted on November 10, 2015, as KURSON was "the only person

[Individual No. 1] said [that Individual No. 1 had pneumonia and was on intravenous fluids]

to in order to get out of his birthday party as any other excuse would be seen as an affront,

and I was growing more concerned about his increasingly erratic behavior."   Individual

No. 1 represented that Individual No. 1 had "never mentioned this to [anyone receiving

services from Individual No. 1] because [Individual No. 1 was] not sick or receiving

[intravenous] fluids."   Individual No. 1 stated that Kurson "clearly want[ed] to destroy

[Individual No. 1]."   Individual No. 1 further noted that KURSON had previously used

aliases to make similar allegations to the employer of Individual No. 4, resulting in

---

[7] According to Individual No. 1, Individual No. 1 had decided not to attend KURSON's birthday party because KURSON had recently taken certain actions against another individual, Individual No. 4, that had left Individual No. 4 "upset and humiliated."

Individual No. 4 being fired.[8]   Individual No. 1 also advised the employee: (i) that

KURSON would "escalate . . . any confrontation"; (ii) that Individual No. 1 would contact

law enforcement officers the following day regarding KURSON's harassment of Individual

No. 1; and (iii) that the day had been "extremely upsetting and humiliating."

     28.    That same day, Individual No. 2 emailed a senior employee at the

Employer, in which Individual No. 2 discussed the "very negative review" relating to

Individual No. 1 posted by KURSON on Yelp.com on November 10, 2015.   Individual No.

2 stated that "the timing raises suspicions" and that Individual No. 2 believed the review to

be "malicious" because the author of the negative review posted to Yelp.com on November

10, 2015 was identified as Jayden Wagner, which was the same name used by the individual

who contacted Individual No. 3's employer on November 3, 2015.   Individual No. 2

concluded: "I don't know who Jayden Wagner is, but he seems to be part of this bizarre

scheme to defame myself, [Individual No. 1], and now the [Employer]."

     29.    That same day, KURSON, using the Eddie Train Alias and the Eddie

Train Proton Account, emailed a senior employee at the Employer and asked: "How will I

know if anything is being done about [the alleged illicit sexual relationship between

Individual No. 1 and Individual No. 2]?"   KURSON also claimed that "[e]ven more

information ha[d] come to light" regarding his allegations about Individual No. 1 and

Individual No. 2, although he did not provide further detail.   After a senior employee offered

to speak with KURSON on a telephone call, KURSON replied that he was afraid Individual

---

[8] During the course of its investigation, FBI special agents obtained evidence
corroborating that KURSON had also used aliases to levy false allegations of misconduct
against Individual No. 4 and another individual, Individual No. 5, to their employer.

No. 2 would "recognize my voice! You promised me anonymity! I'm already afraid of retaliation because [Individual No. 3] knows I know them from Chicago."

30.     On or about November 12, 2015, Individual No. 1 reported to senior employees at the Employer that Individual No. 1 had received numerous anonymous telephone calls the previous evening, in which the caller would immediately disconnect the call after Individual No. 1 answered.   According to Individual No. 1, while some of these anonymous telephone calls were made to Individual No. 1's personal cellular telephone, others were made to Individual No. 1's apartment telephone, which could only receive telephone calls from individuals using telephones inside the apartment building.   That same day, Individual No. 1 filed a complaint with the New York City Police Department that Individual No. 1 was being harassed by KURSON.

31.     On or about November 13, 2015, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, emailed senior employees at the Employer, during which he falsely alleged that a co-worker at the Employer had reported to KURSON that Individual No. 1 had "browbeat[en]" another employee at the Employer "about whether [Individual No. 1] thought [Individual No. 2] would ever leave [Individual No. 3]."

32.     On or about November 16, 2015, surveillance video recordings captured KURSON entering the workplace of Individual No. 1 and Individual No. 2 at approximately 2:52 PM.   On the surveillance video recording, KURSON appeared to use his cellular telephone to take photographs of the lobby of the building, after which he departed the location.   Based on information gathered during the course of this investigation, there does not appear to be any legitimate reason for KURSON to have traveled to the workplace of Individual No. 1 and Individual No. 2.

33.     That same day, KURSON sent an email to himself titled "[Employer] review."   In the email, KURSON pasted a copy of the negative review KURSON had posted on Yelp.com on November 10, 2015 of Individual No. 1 using the Jayden Wagner Yelp Account.

34.     On or about November 17, 2015, KURSON, using the alias Jayden Wagner and the Jayden Wagner Yelp Account, posted another negative review of Individual No. 1's services on Yelp.com.   The substance of the negative review posted by KURSON on Yelp.com using the Jayden Wagner Yelp Account on November 17, 2015 was identical to the substance of the negative review posted by KURSON on Yelp.com using the Jayden Wagner Yelp Account on November 10, 2015.   However, in the negative review posted by KURSON to Yelp.com on November 17, 2015, KURSON attached a photograph, which he dated November 16, 2015, of the lobby of Individual No. 1 and Individual No. 2's workplace.   In the photograph, there appears to be a clock displaying the time as approximately 2:54 PM, which is consistent with the surveillance video recordings on November 16, 2015, capturing KURSON entering the building lobby of the Employer at approximately 2:52 PM and taking a photograph using his cellular telephone.   Further, the photograph depicts a receptionist sitting in the lobby of the building wearing particular clothing, which is consistent with the surveillance video recordings on November 16, 2015, capturing the same receptionist wearing identical clothing when KURSON entered the building lobby and took a photograph using his cellular telephone.

35.     Later that day, a senior employee at the Employer emailed Individual No. 2 and another senior employee at the Employer and stated: "This is a little scary that he was in the office and we don't know who this person is. . . . Is there any way to find out who

this Wagner person is? . . . I am very concerned now that he posted a picture inside" the building lobby.

36.     Records maintained by Yelp.com reflect that between November 13, 2015 and November 18, 2015, the Jayden Wagner Yelp Account posted ten reviews of unrelated businesses.   Then, KURSON, using the Ken Kurson Yelp Account, voted that the review posted by the Jayden Wagner Yelp Account was "useful, funny, or cool."   KURSON was the only individual to vote in this manner.   The interaction between the Ken Kurson Yelp Account and the Jayden Wagner Yelp Account further establishes that KURSON was the user of the Jayden Wagner Yelp Account and the Jayden Wagner Alias.

37.     On or about November 23, 2015, KURSON, using the Jayden Wagner Alias and the Jayden Wagner Yelp Account, posted another negative review of Individual No. 1's services on Yelp.com.   The substance of the negative review posted by KURSON on Yelp.com using the Jayden Wagner Yelp Account on November 23, 2015 was almost identical to the substance of the negative reviews posted by KURSON on Yelp.com using the Jayden Wagner Yelp Account on November 10, 2015 and November 17, 2015.

38.     That same day, surveillance video recordings captured KURSON entering the workplace of Individual No. 1 and Individual No. 2 at approximately 7:44 PM. According to an employee at the Employer, KURSON asked the employee whether Individual No. 1 was present.   After being advised that Individual No. 1 was not available, KURSON departed the location.   Based on information gathered during the course of this investigation, there does not appear to be any legitimate reason for KURSON to have traveled to the workplace of Individual No. 1 and Individual No. 2.   As a result of

KURSON's visit, the Employer hired security personnel to guard the lobby of the workplace and escort Individual No. 1.

39.     Later that same evening, KURSON, using the Eddie Train Alias and the Eddie Train Proton Account, emailed two senior employees at the Employer and asked for "updates" regarding his allegations of an illicit sexual relationship between Individual No. 1 and Individual No. 2, and asked them whether KURSON should assume they were "on top of the situation."

40.     On or about November 24, 2015, Individual No. 1 informed senior employees at the Employer that, "after significant online abuses including accusations emailed to others about [Individual No. 4], [Individual No. 4] has obtained a restraining order [against KURSON] and is leaving the state."[9]   Individual No. 1 cautioned that, as a result, "there may be an increase in activity from him focused toward me."   Individual No. 1 specifically identified KURSON as the individual engaged in the harassment activity against Individual No. 1.   A senior employee replied to Individual No. 1 that the Employer was taking action "to protect the [Employer] and its employees (including you)," and offered to assist Individual No. 1 with relocating to a new residence, in light of KURSON's harassment.   Individual No. 1 replied that Individual No. 1 had already scheduled to move residences.   Individual No. 1 further stated: "My email was hacked 2 days ago with my lease agreement being the first thing in there, so he probably knows that address anyway. I can't hide forever. . . . I honestly have no idea what to do about this. I've never experienced or heard of anything so insane."

---

[9] According to official records obtained during the course of this investigation, Individual No. 4 did obtain a temporary restraining order against KURSON that day.

41.    On or about the same day that KURSON was served with a temporary restraining order by Individual No. 4, KURSON closed the Jayden Wagner Yelp Account and deleted an account at Facebook.com, a social media website, associated with the Jayden Wagner Email Account.

42.    According to records maintained by the Employer, on or about November 24, 2015, the Employer retained an investigative consulting firm to assist in their investigation of KURSON's harassment of Individual No. 1 and Individual No. 2.

43.    On or about December 2, 2015, Individual No. 2 received a letter in the mail at Individual No. 2's workplace from KURSON, who was using the Jayden Wagner Alias.   In the letter, KURSON reiterated the false allegations that he had previously made in the negative reviews he had posted about Individual No. 1 to Yelp.com using the Jayden Wagner Yelp Account on November 10, 2015; November 17, 2015; and November 23, 2015. However, KURSON also included additional allegations that Individual No. 1 had told KURSON and his sister, while they were receiving services from Individual No. 1, that Individual No. 2 was "falling in love with" Individual No. 1, and that the illicit sexual relationship between Individual No. 1 and Individual No. 2 had turned into a "love triangle," given Individual No. 2's marriage to Individual No. 3.   KURSON further added that Individual No. 1 was "rude and curt and a perfect example of why [persons engaged in Individual No. 1's profession] get called arrogant. . . . [I]t's the rude tone and the unprofessionalism [of Individual No. 1] that bothered my sister and I."   KURSON identified himself in the letter as "Jayden L. Wagner," signed it "J" and listed the Jayden Wagner Email Account as his contact information.   Individual No. 2 provided a copy of the letter to senior employees at the Employer.

## The Victims' Emotional Distress

44.     KURSON's conduct would be reasonably expected to cause and did in fact case substantial emotional distress to the Victims.   The Victims variously described KURSON's conduct towards them as "traumatic," "diabolical," "insane," "super scary," "frightening," "threatening," "malicious" and "terrif[ying]."   At least one of the Victims underwent medical treatment and therapy, as a result.   As previously discussed, Individual No. 1 reported KURSON's harassment to the New York City Police Department, and the Employer retained a security guard due to KURSON's repeated appearances at the workplace of Individual No. 1 and Individual No. 2.

WHEREFORE, your deponent respectfully requests that the defendant KENNETH KURSON, also known as "Jayden Wagner" and "Eddie Train," be dealt with according to law.

_Andrew Taff_
ANDREW TAFF
Special Agent, Federal Bureau of Investigation

Sworn to before me this
22 day of October, 2020

_Robert Levy_
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK